IN RE INTEREST OF C.A.A., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. L.A. AND W.A., APPELLANTS.
IN RE INTEREST OF V.S.A., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. L.A. AND W.A., APPELLANTS.

425 N.W.2d 621

Filed July 8, 1988.   Nos. 87-684, 87-685.

James M. Mathis, of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellant L.A.

Randall L. Lippstreu, of Harris & Lippstreu, for appellant W.A.

Leonard G. Tabor, Special Prosecutor, for appellee.

Richard H. Jensen, guardian ad litem.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and WOLF and McGINN, D. JJ.

WOLF, D.J.

This is an appeal from orders of the county court for Morrill County sitting as a juvenile court terminating the parental rights of the father and mother of the two minor children. The cases were separately docketed in the juvenile court but consolidated here for the purpose of hearing on appeal.

The juvenile proceedings were initiated June 13, 1984, with petitions alleging the children to be persons under Neb. Rev. Stat. § 43-247(3) (Cum. Supp. 1982). After hearing on August 1, 1984, the court determined the children to be within § 43-247(3) and placed the children in the care, custody, and control of the Nebraska Department of Social Services.

Initially, the children were placed in the home of their maternal grandparents. In October of 1984, the children were placed in an area foster home. A Child Protective Services worker arranged schedules of visitation between the parents and the children, but in November of 1984 both parents moved away without any communication to the service worker. The parents returned to Nebraska from Texas in February of 1985. Immediately, the service worker set up visitation between parents and children, but between February 8 and September 6, 1985, the parents only appeared for one visit, and on that occasion the father was arrested for causing a disturbance.

In 1986, visitations were prearranged for the second Monday of each month, and the mother did not show for visits in April, May, June, or July. In the meantime, the father was charged in district court in February of 1986 with attempted incest, a Class IV felony, and third degree sexual assault, a Class I misdemeanor. The offenses were alleged to have occurred in June and May, respectively, of 1984. The victim of both assaults was his daughter.

The father pleaded guilty to the charges and was sentenced in July 1986 as a mentally disordered sex offender, for terms of 3 years on the first count and 1 year on the second count, to be served concurrently. Upon his release by the Department of Correctional Services, the father was committed to the Hastings Regional Center by the Morrill County Mental Health Board, and was still committed at the time of the termination hearing.

Motions to terminate the parental rights of both parents were filed April 14, 1987, and a hearing was held on July 1, 1987. After hearing, the juvenile court found it in the best interests of the children to terminate parental rights and specifically found that the parents had abandoned the children for 6 months or more, that the parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and that there are reasonable grounds to believe that such conditions will continue for a prolonged, indeterminate period.

The evidence at trial was compelling that the mother is mentally incapable of providing an adequate home for the children. The degree of filth in the home and her utter dependency upon others negate her ability to discharge parental

responsibilities.

A psychologist diagnosed the mother's problems in two parts, borderline intellectual ability and dependent personality disorder. The psychologist testified that her mental disorders would make it extremely difficult for her to discharge normal parental duties and obligations without extreme intervention. Explaining further, the psychologist testified that in order for the children to be without danger and exist in a situation in which there was a very low likelihood of neglect, the mother would essentially need to have someone acting in a parental role for her. The witness testified that the mother would need to have somebody who could provide her not only with training, but also with ongoing supervision on a day-to-day basis, such as a live-in person. The expert further testified that the mother's mental condition will continue for a prolonged and indeterminate period. He stated the personality disorder is by definition a long-term pervasive and relatively unchanging diagnosis.

The psychologist testified that the father was mentally ill and dangerous. His mental illness was diagnosed as a schizophrenic reaction, paranoid or undifferentiated type, and a mixed personality disorder including antisocial, dependent, and passive-aggressive traits. He testified that the father's mental illness would make it impossible for him to discharge parental responsibilities and that the prognosis for substantial change was very poor.

Although both parents have attempted to raise issues as to whether, in fact, there was an abandonment under the statutory language, reciting the few contacts made by the parents since the placement in foster care, they have each, by their own individual actions, shown an abandonment of any desire to maintain parental control and contact.

In *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 765, 408 N.W.2d 272, 276 (1987), we stated that willful abandonment has been defined as " ' "an intentional withholding from the child, without just cause or excuse, by the parent, of his presence, his care, his love and his protection, maintenance, and the opportunity for the display of filial affection . . . ." ' "

Each parent could make a valid argument that but for the mental disorders the parents would not abandon or cease to protect the children, but such argument would simply supply the cause and effect which compels this court to agree with the trial court. The evidence is overwhelming that both parents suffer from mental illness or deficiencies which prevent each of them from discharging basic parental responsibilities and that the parental rights were properly terminated.

Where a parent is unable to discharge parental responsibilities because of mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged and indeterminate period, parental rights may be terminated if such action is in the best interests of the child. *In re Interest of Fant*, 214 Neb. 692, 335 N.W.2d 314 (1983).

When first placed in foster care, the two children, then ages 6 and 7, showed the lack of training and the effects of parental neglect. They were not toilet trained. They ate their meals with their fingers, being untrained in the use of table utensils. The boy was too nervous to sit at the table during meals and would sometimes kick or spit on other children at school. After the first year in the foster home, all these problems were solved, and both children behaved and acted as normal children. It is in the best interests of the children to terminate parental rights when the father and mother do not and cannot perform basic parental responsibilities.

The suggestion has been made by the mother that although she alone cannot care for the children, the court could establish a guardianship for the children, place the children in acceptable foster care, and still preserve the parental ties and love which are natural between the parent and children.

This proposal suggests that the natural relationship should be fostered and maintained even if the parent cannot assume the role of parent. The objective of the State is securing the best interests of the child, and this includes providing the child a safe home with parents capable of fulfilling the parental role. The parental role, as referred to in Neb. Rev. Stat. § 43-292(5) (Reissue 1984), includes ability to discharge parental responsibilities. Although termination of parental rights may sometimes appear cruel or harsh, experience has shown that

failure to terminate parental rights in appropriate cases simply punishes the child for the uncorrectable deficiencies of the parents, thereby extending the same problems and conditions into successive generations.

As we said in *In re Interest of R.H., T.H., and J.H.*, 219 Neb. 904, 907, 367 N.W.2d 145, 147 (1985):

> The law is not unmindful of a mother's love, of the crippling effects of a history of child abuse and alcoholic parents, and of the grinding effects of an inferior education and habitual poverty, but the law is also not so cruel that punishment for these apparently unchangeable conditions should be imposed on the children. If the only way to break the chain is termination, the law and this court will not flinch.

The judgment of termination of parental rights is affirmed.

AFFIRMED.