IN RE INTEREST OF D.A.B. AND J.B., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. D.B., APPELLANT.
483 N.W.2d 550

Filed May 8, 1992.    No. S-91-735.

Kathleen Koenig Rockey, of Domina & Copple, P.C., and Jane R. Mapes, guardian ad litem for D.B., for appellant.

Joseph M. Smith, Madison County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The appellant is the mother of two sons, D.A.B., born July 18, 1982, and J.B., born November 28, 1984. She has appealed from the order of the county court terminating her parental rights to the two children. The father of the children has relinquished his parental rights to the children and is not a party to this appeal.

Our review is de novo on the record, and we are required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, we will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

*In re Interest of A.M.Y., F.E.Y., and K.C.Y*, 237 Neb. 414, 415, 466 N.W.2d 93, 94 (1991).

On September 13, 1989, a petition was filed in the county court alleging that the two children were in a situation dangerous to their health or morals because of physical abuse by their father. The abuse was apparent when D.A.B. came to school with a bloody nose, a bump on his head, and various bruises. A guardian ad litem was appointed for the children, they were placed in the temporary custody of the Department of Social Services (DSS), and a temporary restraining order against the father was entered.

D.A.B. had been in the custody of DSS from July 7, 1983, to June 1, 1987, because he had been diagnosed as a failure to thrive infant. He was returned to the custody of his parents in 1987, after extensive efforts had been made to rehabilitate the family. D.A.B. had grown older and was able to better communicate his needs. The father was in the home, and it was hoped he would be able to assist in or take over the parenting of the children.

On October 5, 1989, and again on November 30, 1989, the children were found to be juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) and were placed in the custody of DSS. At the hearing on November 30, 1989, the appellant admitted that the allegations in the petition were true. The parents were ordered to participate in individual family counseling.

On June 29, 1990, the children were removed from the custody of the appellant and placed in foster care. The record shows that at that time it was alleged the appellant and her boyfriend had been engaging in sexual contact in front of the children, the home was in an unsanitary condition, and there was chronic neglect of the children.

Prior to the removal, J.B., who was then 5 years old and still wearing diapers, would come to preschool on a daily basis in a filthy condition and had to be cleaned by the teachers. He suffered from severe diaper rash, as well as open sores on other areas of his body. He also came to school with severe ear infections.

D.A.B. was sent home with chickenpox in March 1990, but was sent back to school the next day by the appellant and was again returned home.

Both children had to be treated for head lice.

On March 22, 1990, a day when it was 27 degrees outside with a windchill of -3 degrees, Monica Matteo, a Head Start worker, visited the home and found J.B. playing outside without a coat. When Matteo and J.B. entered the house, the appellant and her boyfriend appeared to be unclothed in the living room and went into the bedroom. Later, the appellant came out of the bedroom wrapped in a blanket.

On several occasions Matteo observed the house to be unclean. She also saw J.B. eat bologna off a dirty floor without without any objection from the appellant.

Attempts were made to explain the importance of proper hygiene to the appellant and to show her how to properly bathe the children and treat them for their various illnesses. The appellant was also instructed on how to clean her home.

At the request of DSS, Dr. A. James Fix performed a psychological evaluation of the appellant in July 1990. He

determined that the appellant is mildly mentally retarded and due to that mental deficiency, she would not be able to acquire the proper parenting skills to care for her children.

In April 1991, Dr. Richard Sanders performed a psychological evaluation of the appellant at the request of her attorney. He determined that the appellant is mildly mentally retarded; however, his opinion was that with the appropriate instruction, the appellant might be able to learn to properly care for her children.

On November 8, 1990, a motion for termination of the parental rights of the appellant, pursuant to Neb. Rev. Stat. § 43-292(5) (Reissue 1988), was filed. The motion alleged that the appellant is unable to care for her dependent children due to her mental retardation, which is a lifelong condition. After the hearing on the motion, the county court terminated the appellant's parental rights on July 17, 1991.

The appellant has assigned as error that the county court erred in terminating her parental rights and in failing to make a complete recording of the proceedings so that an accurate bill of exceptions could be prepared.

After a bill of exceptions had been prepared in this case, the parties discovered that at the hearing on July 1, 1991, not all of the testimony of the appellant could be transcribed because there had been a malfunction in the recording equipment. Most of the questions had been recorded, but the appellant's responses were inaudible.

From a review of the questions, the appellant's attorney was able to reconstruct most of her omitted responses. That reconstruction was reduced to writing and stipulated as a part of the record by all of the parties.

The appellant was available and could have been examined again to ascertain her answers to those questions to which her answers had not been recorded. Counsel, however, did not request a further hearing but was content to rely upon the record as reconstructed and complains as to that part which had not been reconstructed. Based upon our review of the record which the parties have submitted and the circumstances in this case, we conclude that the appellant has not been prejudiced or deprived of any substantial right, and the assignment of error is

without merit.

In this case, the record establishes by clear and convincing evidence that the appellant is unable to discharge her parental responsibilities because of her mental deficiency. The evidence also shows that her mental deficiency will continue for a prolonged and indefinite period.

It was the opinion of both experts who testified that the appellant is mildly mentally retarded and that intellectually she is in the bottom 1 percent of the population as a whole. Neither expert expects the mental deficiency to go away.

From 1983 to 1987, extensive resources were employed by DSS in an effort to help the appellant develop adequate parenting skills. There were classes, counseling, supervision, and in-home visits.

There was but little improvement, and when the children were taken from the custody of the appellant and placed in foster care, it was apparent that the appellant was unable to fulfill her parental obligations.

The testimony of Matteo demonstrates that the children were not adequately cared for and constantly suffered from unsanitary conditions and neglect. Despite Matteo's efforts to demonstrate appropriate parenting skills to the appellant, the children continued to be neglected.

Although the appellant was provided with extensive services to assist her in properly raising her children, she was unable to profit from the instruction provided because of her mental deficiency.

When a parent is unable to discharge his or her parental responsibilities because of a mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged and indeterminate period, the parental rights may be terminated when such action is shown to be in the best interests of the children. *In re Interest of M.M., C.M., and D.M.*, 234 Neb. 839, 452 N.W.2d 753 (1990).

It is also clear that termination of the appellant's parental rights is in the best interests of the children. When a natural parent suffers from a mental deficiency and cannot be rehabilitated within a reasonable period of time, the best interests of the children require that a final disposition be made

without delay. *In re Interest of M.M., C.M., and D.M., supra.*

At best, it is uncertain that the appellant will ever be able to learn to discharge her parental obligations in an appropriate manner. " 'A child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity.' " *Id.* at 843, 452 N.W.2d at 756.

The order terminating the parental rights of the appellant is affirmed.

AFFIRMED.