IN RE INTEREST OF NATASHA H. AND SIERRA H.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
ANGEL H., APPELLANT, AND JOHN H., APPELLEE.
602 N.W.2d 439

Filed November 12, 1999. Nos. S-98-1116, S-98-1117.

Julie L. Reiter, of Mills & Reiter, for appellant.

Randy R. Stoll, York County Attorney, for appellee State.

Stephen A. Burt, of Jeffrey, Hahn, Hemmerling, & Zimmerman, for appellee John H.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## BACKGROUND

Natasha H. was born to John H. and Angel H. on June 21, 1996, and was placed in the temporary custody of the then Nebraska Department of Social Services, now the Department of Health and Human Services (Department), the day after her birth. Sierra H. was born to the same parents on September 11, 1997, and was taken into custody by the Department on that date.

On July 15, 1991, Samantha H. had been born to John and Angel. On August 16, 1991, Samantha was severely injured by John, who shook her violently after she woke him. Samantha suffered severe neurological injuries which have caused permanent and profound brain damage. John was convicted of felony child abuse, and the parental rights of John and Angel to Samantha were terminated.

In 1995, John was charged with third degree assault after he severely beat Angel. Initially, Angel was the complaining witness, but at trial, she substantially retracted her initial statements in an apparent attempt to protect John. John was convicted nonetheless and sentenced to 350 days in the York County Jail. Angel and John maintained their relationship despite John's abusive behavior, and Natasha was conceived during John's jail term while he was out on work release.

On August 26, 1996, Natasha was adjudicated and found to be within the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). *In re Interest of Natasha H.*, 97 NCA No. 28, case No. A-96-964 (not designated for permanent publication), *petition for further review overruled* 253 Neb. xxvii (Sept. 17, 1997). Angel, but not John, appealed to the Nebraska Court of Appeals, which affirmed. *Id.* Sierra was similarly adjudicated on December 4, 1997. The trial court specifically found that Angel was either unwilling or unable to protect herself and her children from John's abusive behavior.

The trial court issued rehabilitation plans for Angel relating to Natasha and Sierra on January 23, 1998. The orders generally required Angel to engage in psychotherapy, stop using drugs,

establish a home for herself, stop covering up John's behavior, and make a decision about her future relationship with John. No appeal was taken from the rehabilitation plan.

On April 17, 1998, the State filed petitions to terminate parental rights of John and Angel to Natasha and Sierra, pursuant to Neb. Rev. Stat. § 43-292 (Cum. Supp. 1996). On May 14, the State amended its petition to allege grounds under the recently amended Neb. Rev. Stat. § 43-292 (Reissue 1998).

The matter came on for hearing on July 16, 1998. The trial court found that termination of parental rights for both Natasha and Sierra was warranted pursuant to § 43-292(2), (5), and (6), and, for Natasha, also on the basis of § 43-292(7). The trial court also found, with respect to John, that he had committed a felony assault that resulted in serious bodily injury to another of his minor children, within the meaning of § 43-292(10)(d). Angel appeals. John filed a notice of appeal in Sierra's case but not in Natasha's case. The appeals relating to Natasha and Sierra have been consolidated in this court.

## ASSIGNMENTS OF ERROR

In both appeals, as consolidated and restated, Angel assigns that the trial court erred in (1) entering an order terminating her parental rights 6 months after identifying reunification as the permanency objective, where the facts establish that Angel was working toward compliance with the rehabilitation plan; (2) applying 1998 Neb. Laws, L.B. 1041 (the 1998 amendment to § 43-292) retroactively to the present case; (3) finding that Angel had denied the children necessary care and protection; (4) finding that Angel was unable to discharge parental responsibilities because of a mental deficiency; (5) finding that reasonable efforts to preserve or reunify the family were made or that such efforts had failed to correct the conditions leading to the adjudications; (6) finding that Angel's continued relationship with John supported termination of parental rights; (7) finding that Angel failed to comply with the terms of the dispositional orders; and (8) finding that it was in the best interests of the children that parental rights be terminated.

Additionally, in the appeal with respect to Natasha, Angel assigns that the trial court erred in (9) continuing to hold

dispositional hearings relating to John during Angel's appeal from the adjudication and (10) excluding Angel from participating in John's dispositional hearings and using evidence obtained at those hearings against Angel at the termination of her parental rights hearing.

John, as appellee, assigns, restated, that the trial court erred in (1) applying L.B. 1041 retroactively and (2) in overruling his continuing objection to the sufficiency of the State's petition. John has not, however, designated his brief as a cross-appeal as required by Neb. Ct. R. of Prac. 9D(4) (rev. 1996).

## SCOPE OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Danielle D. et al.*, 257 Neb. 198, 595 N.W.2d 544 (1999).

■ Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting such and that such is in the juvenile's best interests. *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997).

■ Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from that of a trial court. *Ritchhart v. Daub*, 256 Neb. 801, 594 N.W.2d 288 (1999).

■ Notwithstanding that the Nebraska rules of evidence do not apply in dispositional hearings held in proceedings arising under the Nebraska Juvenile Code, the requirements of due process control in determining the type of evidence which may be used by the State in an attempt to prove that parental rights should be terminated. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). Improper admission of evidence in a parental rights proceeding does not, in and of itself, constitute

reversible error, for, as long as the appellant properly objected, an appellate court will not consider any such evidence in its de novo review of the record. *Id.*

## ANALYSIS

### DUE PROCESS

In Natasha's case, Angel claims the trial court erred in excluding her from participation in John's dispositional hearings while her appeal from the adjudication was pending.

■ Angel appears, to some extent, to be arguing that the trial court did not have jurisdiction to act regarding John while Angel's case was on appeal. Angel does not have standing to raise this claim. In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *Hawkes v. Lewis*, 255 Neb. 447, 586 N.W.2d 430 (1998). To the extent that Angel is arguing that the trial court lacked jurisdiction to proceed against John, she is asserting his rights and not her own.

Angel also argues that her own due process rights were violated by the trial court's determination to proceed against John, yet prevent her from participating while her appeal was pending. This presents a procedural due process claim.

■ Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998); *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996). The central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard, and, in order that they may enjoy that right, they must first be notified. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999); *McAllister v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 910, 573 N.W.2d 143 (1998). The extent to which procedural due process must be afforded a recipient is influenced by the extent to which the recipient may be condemned to suffer grievous loss. *In re Interest of Constance G., supra.*

The foregoing propositions, however, assume that the complaining party's rights have, in fact, been affected. In short, in order to sustain her procedural due process claim, Angel must demonstrate that the trial court's actions in some way prejudiced her, as error without prejudice provides no ground for appellate relief. See *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988). In this regard, the only prejudice Angel claims is that the record of the hearing conducted without her participation was admitted into evidence at the termination of parental rights hearing as exhibit 11.

An examination of exhibit 11 reveals that its admission did not result in prejudice to Angel. Exhibit 11 is the testimony from a dispositional hearing relating to John and contains information relating to John's participation in counseling sessions. There is no information in exhibit 11 that casts any light on Angel, unfavorably or otherwise. Moreover, the record is replete with other sources for the same information contained in exhibit 11, none of which are complained of on appeal. Evidence objected to, which is substantially similar to evidence admitted without objection, results in no prejudicial error. See *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

In short, the admission and consideration of exhibit 11 did not prejudice Angel, and Angel alleges no other prejudicial effect from her failure to participate in John's dispositional hearing. As Angel has not shown how her rights have been affected, she has not raised a colorable claim that her right to procedural due process was denied.

### BASIS FOR TERMINATION

Angel essentially assigns as error all of the factual findings underlying the trial court's grounds for termination of her parental rights. We turn first to termination under § 43-292(5) (Cum. Supp. 1996), which provides:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

. . . .

(5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period.

We note that this subsection was not affected by the 1998 amendments to § 43-292. See § 43-292(5) (Reissue 1998). Consequently, this subsection presents no question regarding retroactive application of the amended statute.

## FACTUAL RECORD

The evidence presented at the termination of parental rights hearing indicated, generally, that although Angel did not pose a danger to the children, John did, and that Angel's relationship with John was such that she was unable to disassociate herself from him and would be unable to protect her children from his violent behavior.

Sherrie Spilde, one of the parents' caseworkers with the Department, testified that generally, Angel had complied with the case plan prepared by the Department. Angel rarely missed visitation with the children, acted appropriately with the children, attended a support group for victims of domestic violence, and obtained employment. Angel also rented a residence separate from John's.

John, however, failed to take anger management classes as directed by the case plan. John also admitted to the abuse which left John and Angel's oldest daughter, Samantha, in a vegetative state and resulted in the termination of their parental rights to Samantha. Spilde observed an instance where John failed to control his anger. John did see a counselor, a Reverend Blanchard, but discontinued that treatment after a few sessions. John also made some threatening telephone calls, apparently to law enforcement officials.

Despite some progress, Spilde testified that Angel continued to be detrimentally involved with John. Angel documented instances of John's anger, but she took responsibility for those events. Angel moved out of John's home but returned after 6 weeks. Angel also sought a protection order against John but voluntarily dismissed the order after a few days and again

returned to John. Spilde also saw an incident in which Angel reinforced John's anger toward others. In short, Spilde said that Angel had made progress but was still unable to protect her children from John.

Lee C. Zlomke, a clinical psychologist, testified regarding his observations and diagnoses of John and Angel. Zlomke testified that although he proposed providing family services to John in John's home, John refused, and was resistant to therapy. Zlomke testified that John was suffering from an unsocialized, aggressive personality disturbance that posed a risk to his children. Zlomke testified that John would require years of therapy before his condition might improve and that even then, such therapy was unlikely to be successful.

Zlomke diagnosed Angel as having a passive-dependent personality disorder. Zlomke said that Angel, like John, would require years of therapy and that Angel would, prior to completion of therapy, be unable to protect her children from John. Zlomke also testified that before reunification could be achieved, John and Angel would have to attend family therapy after they had each completed individual therapy. Zlomke concluded that John and Angel were unlikely to successfully complete therapy.

Helen M. Montoya, another clinical psychologist, also testified regarding John and Angel. Montoya diagnosed John as having a paranoid personality disorder as well as an antisocial personality disorder. Montoya also testified that John was a drug abuser, as John informed her that he used marijuana daily and would continue to do so. Montoya testified that John represented a risk to his children and that although John had made progress, he would require another 4 to 5 years of therapy to address his psychological problems.

Angel was diagnosed as having an adjustment disorder, a dependent personality disorder, and a drug abuse problem. Montoya testified that John dominated and controlled Angel, in part by isolating her from other influences. Montoya testified that Angel needed 2 to 4 years of therapy to address her disorders but that she would be incapable of changing unless John changed as well. Montoya concluded that John and Angel, together, posed a risk to their children.

Julia Christoffersen, a family therapy psychologist, testified regarding her treatment of Angel. Christoffersen testified generally that Angel had made some progress in addressing her problems, but had been unable to separate herself from John, and that Angel depended on John to provide meaning to her life.

Christoffersen testified that although Angel obtained her own apartment in February 1998, in part paid for by the Department, Angel had not, at the time of the hearing, moved into the apartment on a full-time basis. John reportedly interfered with Angel's attempts to live independently. Christoffersen testified that Angel reported that she had decided, in March, to seek legal separation from John but that this was not done. Angel told Christoffersen that Angel would be unable to remain in Nebraska and still separate from John. In fact, Angel intended to go on vacation with John at the end of July 1998, after the termination of parental rights hearing.

Ervin Kopp, an employee of Omni Behavioral Health, testified regarding his observations while supervising John and Angel's visitation. Kopp testified that he had seen John, on several occasions, lose his temper and that John had, on one occasion, seemed to threaten Kopp with physical violence. Shannon Marksbury, another employee of Omni Behavioral Health, confirmed that John and Angel were going on vacation together and also testified that Angel was not spending nights at her own apartment. Karen Bachman, a domestic abuse advocate for Blue Valley Community Action Crisis Intervention, testified that Angel had been attending a domestic violence support group and, in her opinion, was making progress.

Dawana Wilcox, the Department caseworker assigned to John and Angel at the time of the termination of parental rights hearing, testified regarding her observations. Wilcox testified that Angel had not reached a decision regarding her relationship with John, as she had been directed to do by the trial court. Wilcox confirmed that Angel had not sought a separation or divorce. Wilcox stated that Angel had not moved into her own apartment on a full-time basis. Wilcox also testified that John had attended some anger management classes, but had quit. Wilcox also testified regarding an incident, shortly before the termination hearing, in which John had physically assaulted Angel, pinned her

onto a bed, and screamed at her regarding her attempts to move out of his home.

Angel testified on her own behalf. She stated that although she had secured employment, John did not like her having a job. Angel testified that she had not made a decision regarding her relationship with John and did not know when she would. Angel confirmed the details of the incident in which John pinned her onto the bed and yelled at her. Angel testified that, generally, she was uncertain about the future of her relationship with John.

Angel admitted that John was a danger to their children, but asserted that he was not a danger to them when she was present. She discussed her frustration with John that he was unwilling to attend therapy. Angel admitted that she and John were planning a vacation to Kansas City together and also admitted that despite having her own apartment, she spent many nights at John's. Regarding her children, Angel testified that there was mutual affection between them and that she felt they would miss each other if separated.

John did not testify at the termination hearing.

## MENTAL DEFECT OR DEFICIENCY

Under § 43-292(5), when a natural parent suffers from a mental deficiency and cannot be rehabilitated within a reasonable period of time, the best interests of the child require that a final disposition be made without delay. *In re Interest of D.A.B. and J.B.*, 240 Neb. 653, 483 N.W.2d 550 (1992). We have held that where a parent is unable to discharge parental responsibilities because of mental illness or disorder and there are reasonable grounds to believe that such condition will continue for a prolonged and indeterminate period, parental rights may be terminated if such action is found to be in the best interests of the children. See *In re Interest of B.M.*, 239 Neb. 292, 475 N.W.2d 909 (1991).

In *In re Interest of C.A.A. and V.S.A.*, 229 Neb. 135, 425 N.W.2d 621 (1988), the mother was diagnosed with borderline intellectual ability and dependent personality disorder. We noted the opinion of a psychologist that "in order for the children to be without danger and exist in a situation in which there was a very low likelihood of neglect, the mother would essentially need to

have someone acting in a parental role for her." *Id.* at 137, 425 N.W.2d at 622. The psychologist further testified that "the mother's mental condition will continue for a prolonged and indeterminate period" and that the dependent personality disorder was "by definition a long-term pervasive and relatively unchanging diagnosis." *Id.* at 137, 425 N.W.2d at 623. This court affirmed the termination of the mother's parental rights pursuant to § 43-292(5), stating that "[a]lthough termination of parental rights may sometimes appear cruel or harsh, experience has shown that failure to terminate parental rights in appropriate cases simply punishes the child for the uncorrectable deficiencies of the parents, thereby extending the same problems and conditions into successive generations." *Id.* at 138-39, 425 N.W.2d at 623.

*In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988), also presented a factual situation that was extremely similar to that in the instant case. In that case, the father abused the child, and the mother was diagnosed with a dependent personality disorder. *Id.* Two psychological experts expressed concern that the mother would inevitably choose a boyfriend or husband who would take control and potentially harm the child. *Id.* One expert testified that with up to 2 years of therapy, the mother could overcome her disorder, while the other expert testified that the condition was potentially treatable with long-term therapy over an indeterminate period of time. *Id.*

■ We determined that a "mental deficiency," as used in § 43-292(5), included an impairment in capacity such that a parent was unable to profit from instruction and acquire parenting skills. *Id.* We concluded that

> even to the extent the disorder is theoretically treatable, assuming that to mean it is curable, the record tells us that the treatment would extend over an indeterminate period. The only concrete suggestion is that treatment would take another 2 years. We cannot gamble away an additional 2 years of this child's life on the speculative hope that the mother can overcome the deficiency which she, albeit through no fault of her own, brought to motherhood. As we have noted in the past, a child cannot, and should not, be

suspended in foster care, nor be made to await uncertain parental maturity.

*Id.* at 445, 432 N.W.2d 38.

As detailed above, the record in the instant case contains ample testimony from psychological experts, stating that Angel suffers from personality disorders which render her unable to adequately protect her children and that these disorders will take years to treat, if they can in fact be successfully treated at all. This record provides clear and convincing evidence that Angel's personality disorder prevents her from discharging parental responsibilities and that she cannot be rehabilitated within a reasonable period of time.

### BEST INTERESTS

Under § 43-292(5), the State must also show that termination of parental rights is in the best interests of the children. The evidence established that John is a threat to his children and will not cease to be a threat in the foreseeable future. The evidence further established that Angel is psychologically dependent upon John, that she is likely to remain so for the foreseeable future, and that she is unable to protect her children from the threat he represents. Given the unlikelihood that Angel will be able to sever her relationship with John, the best interests of the children require termination of the parental rights of both parents in order to protect them from John's abuse.

Some of the evidence at trial did establish that Angel is making slow progress toward independence from John. It would certainly appear to be to her benefit to do so. Nonetheless, this has not yet been accomplished and is not likely to happen for a significant period of time, if at all. We have often said that children cannot, and should not, be suspended in foster care, or be made to await uncertain parental maturity. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). In the interim, it cannot be "remotely proper" to subject these children "to an environment where violence, abuse . . . and drugs reign supreme, and where no one appears to be able or willing to defend [these] helpless little human being[s] from the hazards that inevitably flow from such conditions." See *In re Interest of D.L.S.*, 230 Neb. 435, 450-51, 432 N.W.2d 31, 41 (1988) (Grant, J., concurring).

Given the danger posed by John and Angel as a couple to the well-being of their children, and given the near certainty that preserving the parental rights of Angel is tantamount to maintaining the threat posed by John, at least for the foreseeable future, the clear and convincing evidence is that the best interests of the children weigh in favor of termination of Angel's parental rights.

As termination of Angel's parental rights was appropriate pursuant to § 43-292(5), we need not consider Angel's assignments of error relating to the other grounds for termination.

## JOHN'S CROSS-APPEAL

 John did not raise in the trial court the first assignment of error he sets forth in his brief, in which he states that the court erred in applying L.B. 1041 retroactively. In the absence of plain error, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999); *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

John also has failed to properly cross-appeal in either case. John's brief is entitled simply "Brief of Appellee." John is an appellee, as provided by Neb. Rev. Stat. § 25-1913 (Reissue 1995), which provides:

> The cause shall be docketed in the Court of Appeals or Supreme Court under the same title it had in the district court. The party or parties asking for the reversal, vacation, or modification of such judgment, decree, or final order shall be designated as appellant or appellants, and the adverse party or parties shall be designated as appellee or appellees.

John is not merely resisting the claims of the appellant, however. He is seeking affirmative relief, but his argument is not designated as a cross-appeal as required by rule 9D(4), which provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be

headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

The appellate courts of this state have repeatedly indicated that a cross-appeal must be properly designated, pursuant to rule 9D(4), if affirmative relief is to be obtained. See, *Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999); *Osborn v. Kellogg*, 4 Neb. App. 594, 547 N.W.2d 504 (1996); *Ainslie v. Ainslie*, 4 Neb. App. 70, 538 N.W.2d 175 (1995), *aff'd* 249 Neb. 656, 545 N.W.2d 90 (1996). Compare, *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994) (considering assignment of error where appellee mistakenly filed notice of appeal and designated brief as that of appellant); *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990) (considering assignments of error where cross-appellants mistakenly designated themselves as appellants).

In *Schindler v. Walker, supra*, the appellee did not designate a cross-appeal on the cover of its brief, nor did it set forth a specific assignment of error. This court affirmed the determination of the Court of Appeals that the appellee had defaulted the argument, given its failure to assign an error or comply with the requirements of rule 9D(4). *Id.*

In *Osborn v. Kellogg, supra*, the appellant landlords appealed from a judgment in favor of the appellee tenant from the Nebraska Equal Opportunity Commission. In her brief on appeal, the appellee argued that she was entitled to greater compensatory damages than she had been awarded. *Id.* She did not, however, assign the alleged error, nor did she label her brief as a cross-appeal pursuant to rule 9D(4). *Id.* The Court of Appeals refused to consider her argument on those bases. *Id.*

In *Ainslie v. Ainslie, supra*, the husband appealed from a divorce decree which awarded him what he alleged was insufficient alimony. In her appellee's brief, the wife argued that no alimony should have been awarded at all and sought a reversal of that portion of the decree. *Id.* The Court of Appeals noted that the wife failed to present a cross-appeal pursuant to rule 9D(4) and, accordingly, viewed her position as merely resisting the increase in alimony sought by the husband. *Id.*

In *Knaub v. Knaub, supra,* the trial court awarded the divorcing wife attorney fees against both the husband and the husband's attorney. The first notice of appeal was filed by the husband's attorney in his individual capacity. *Id.* Subsequently, the husband filed his own notice of appeal through counsel. *Id.* The husband and his attorney filed a combined brief, which designated both of them as appellants. *Id.* Upon further review of the Court of Appeals, this court noted that since the husband's attorney had filed the first notice of appeal, the husband himself was actually an appellee, and had not complied with the rules for presenting a cross-appeal. *Id.* Since the combined "appellants' brief" comported with the rules for an appellants' brief, however, this court considered the husband's assignments of error. *Id.*

*In re Application A-16642, supra,* presented an instance in which a number of parties challenged an order of the Director of Water Resources granting a permit sought by the Nebraska Game and Parks Commission. One of the objectors filed a notice of appeal, thereby relegating the other objectors to the status of appellees and cross-appellants. *Id.* Two of the objectors mistakenly designated themselves as appellants. *Id.* This court noted the error, but nonetheless considered their assignments of error. *Id.*

The present case is governed by the rule set forth in *Schindler v. Walker,* 256 Neb. 767, 592 N.W.2d 912 (1999); *Osborn v. Kellogg,* 4 Neb. App. 594, 547 N.W.2d 504 (1996); and *Ainslie v. Ainslie,* 4 Neb. App. 70, 538 N.W.2d 175 (1995), *aff'd* 249 Neb. 656, 545 N.W.2d 90 (1996). The distinguishing factor is that in *Knaub v. Knaub,* 245 Neb. 172, 512 N.W.2d 124 (1994), and *In re Application A-16642, supra,* a party who was an appellee and should have cross-appealed mistakenly designated itself as an appellant, rather than as a cross-appellant. In this case, as in *Schindler v. Walker, supra; Osborn v. Kellogg, supra;* and *Ainslie v. Ainslie, supra,* the party that should have cross-appealed designated itself as an appellee, yet still sought affirmative relief.

In short, the appellate courts of this state have always refused to consider a prayer for affirmative relief where such a claim is raised in a brief designated as that of an appellee. We have, in the past, decided to entertain a procedurally defective cross-appeal only where such cross-appeal has been mistakenly

asserted as an appellant's brief. Even this is a matter left solely to the discretion of the courts and does not imply a willingness to consider such defective appeals in the future.

Parties wishing to secure appellate review of their claims for relief must be aware of, and abide by, the rules of this court and the Court of Appeals in presenting such claims. Any party who fails to properly identify and present its claim does so at its peril. See *State v. Woods*, 255 Neb. 755, 587 N.W.2d 122 (1998). John has not complied with the rules of this court in the instant case, and we decline to waive those rules on his behalf.

## CONCLUSION

Angel suffered no prejudice from the trial court's exclusion of her from John's dispositional hearings during the pendency of her prior appeal. The State proved, by clear and convincing evidence, that Angel was unable to discharge parental responsibilities because of mental illness or mental deficiency; that there were reasonable grounds to believe that such condition would continue for a prolonged, indeterminate period; and that termination of Angel's parental rights was in the best interests of the children. John did not raise in the trial court the first assignment of error he sets forth in his brief and has not properly cross-appealed the trial court's judgment. Consequently, the orders of the trial court terminating John's and Angel's parental rights to Natasha and Sierra should be, and are, affirmed.

AFFIRMED.