IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF TREASEAN J. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF TREASEAN J. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CASEY L., APPELLANT, AND SEAN J., APPELLEE.

Filed November 6, 2018.    No. A-17-724.

Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Joseph E. Kuehl, of Lefler, Kuehl & Burns Law Office, for appellant.

Donald W. Kleine, Douglas County Attorney, Anthony M. Hernandez, and David Ceraso, Senior Certified Law Student, for appellee State of Nebraska.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Casey L. appeals from an order of the separate juvenile court of Douglas County that terminated her parental rights as to her minor children. Sean J. seeks to cross-appeal from a separate order of the juvenile court of Douglas County that terminated his parental rights as to his minor children. For the reasons that follow, we affirm the court's order that terminated the parental rights of Casey. We further find that arguably, Sean did not properly cross-appeal the case, but that even if he did, we can find no plain error in the court's order and therefore affirm termination of his parental rights as well.

- 1 -

## II. BACKGROUND

### 1. PROCEDURAL BACKGROUND

Casey is the natural mother of the minor children Treasean J. and Ariana J. who were born in August 2012, and Jonathan B. who was born in November 2013. Sean is the natural father of the twins, Treasean and Ariana, but is not the father of Jonathan. The father of Jonathan is not a party to this action.

On December 30, 2015, the State filed a petition alleging the children were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) and asked that the children immediately be placed in the custody of the State. The State's filing followed on the heels of an officer responding to a disturbance call from the Open Door Mission on December 29 and encountering Casey and her three young children. The officer noticed Casey's red, bloodshot eyes, slurred speech, and the odor of alcoholic beverage. Casey was also unable to follow instructions and had a BAC of .228. Because Casey was banned from the Open Door Mission premises, the officer booked her for trespassing and three counts of child neglect. The court ordered the children into the immediate temporary custody of the Nebraska Department of Health and Human Services (the Department) by order dated December 30, 2015. On January 11, 2016, the court ordered that the children remain in the temporary care of the Department.

Shortly thereafter, the children were placed in the foster care of Diane J., in whose care they remained through the termination hearing except for a brief period. Upon Casey's motion, the children were placed with Casey in her apartment at a treatment facility on December 19, 2016, and removed again on December 27, following the previous day's incident.

Sean filed a complaint/petition in intervention with the court on February 2, 2016, seeking leave to intervene for the purpose of obtaining placement and custody of his children, Treasean and Ariana. The court granted Sean leave to intervene on February 22. On February 25, the State filed a supplemental petition alleging the children fell within § 43-247(3)(a) due to Sean's failure to provide proper parental care and his acts of domestic violence upon Casey in the children's presence.

The children were thereafter adjudicated as minors under § 43-247(3)(a) with respect to Casey by order dated March 15, 2016, and ordered to remain in the care of the Department. The children were also adjudicated as minors under § 43-247(3)(a) with respect to Sean by order dated July 14, 2016. The court further found it would be in the children's best interest to remain in the care of the Department.

By order dated August 30, 2016, following further hearing, the court directed Sean to complete a rehabilitation plan designed to reunify him with his children. The tenets of the rehabilitation plan included maintaining a legal source of income and providing written verification to the Department; undergoing a psychological evaluation, an initial diagnostic interview, and a chemical dependency evaluation; completing a domestic violence class and parenting education class; maintaining safe and adequate housing for himself and his children and providing monthly written verification of the same; abstaining from domestic violence; meeting with the family permanency specialist monthly; and being allowed reasonable rights of supervised visitation. Sean was present at the August 30, 2016, hearing while Casey was absent.

By order dated October 26, 2016, the court directed Casey to continue to meet all her children's basic needs; maintain a legal source of income and provide written verification to the Department; participate in and successfully complete the Family Works program; submit to random drug and alcohol testing; continue participating in AA/NA meetings; successfully complete a domestic violence course; attend all scheduled psychiatric appointments; take all medications as prescribed; successfully complete a parenting education class; abstain from domestic violence; and be allowed reasonable rights of semi-supervised visitation (10%), which may transition to unsupervised visits after 15 days. In the same order, the court also directed that the Department "need undertake no further reasonable efforts" toward reunifying the children with their father, Sean. Casey was present at the October 26 hearing while Sean was absent.

On February 27, 2017, the State filed motions for termination of parental rights with respect to both Casey and Sean. A hearing on the termination motions was held on June 14. Casey did not appear for the hearing but was represented by counsel. Sean, who was at that time incarcerated, did appear with counsel. He orally requested new counsel and a continuance. Both requests were denied.

### 2. TERMINATION HEARING EVIDENCE

At the termination hearing, the State called five witnesses while Sean called one witness and took the stand himself. No other testimony was elicited. It should further be noted that counsel for Casey was asked regarding Casey's whereabouts. Counsel responded that he had discussed the hearing with Casey but did not know Casey's whereabouts.

The witnesses largely testified to Casey's and Sean's failure to consistently engage as parents. Evidence presented at the termination hearing demonstrated that Casey and Sean failed to utilize the rehabilitative services that they were offered and ordered to complete, neglected their children, failed to take advantage of the parenting time afforded them, and exhibited general instability. During their times away from the children, neither Casey nor Sean sent the children any cards or gifts for their birthdays or other holidays, called the children, or provided any type of financial support.

### (a) Evidence Regarding Sean

Sean did not consistently engage in visitation with the children. Sean scheduled visitation on four occasions in September 2016, but only appeared for one visit. He cancelled two others, and simply did not show up for the remaining visit. Similarly, in October, Sean scheduled five visits, three of which he cancelled, and two of which he attended. Sean was eventually unsuccessfully discharged from the visitation provider, Heartland Family Services, after his last visit in October due to cussing and being generally disrespectful toward the visitation workers. His discharge also stemmed from his failure to set up visits on time or attend previously scheduled visits.

At the time of the termination hearing, Sean was incarcerated on a domestic violence charge, which he believed was going to be dismissed. Because of his incarceration, his visitation was completely curtailed in or about February 2017. This was because the children's therapist had directed that only therapeutic visits be conducted, which could not be accommodated at the jail.

By order dated August 30, 2016, Sean was directed to complete various programs to rehabilitate and strengthen his parenting abilities. Britley Kierscht, a Nebraska Families Collaborative (NFC) caseworker, testified that Sean did not complete any court-ordered rehabilitative-style programs and evaluations, however. In particular, he never completed a psychological or psychiatric evaluation, an initial diagnostic interview, a domestic violence batterer's course, or a parenting class. Kierscht was also unable to verify whether Sean had safe, stable, appropriate housing or had maintained stable, legal income despite making efforts to contact Sean at least three times each month beginning in January.

Martha Alcantara-Sanchez, a family permanency specialist with NFC who was the children's caseworker from August 2016 until January 2017, was also never provided any information that Sean had completed the above court-ordered programs. Additionally, Sanchez had scheduled a home visit to determine whether Sean had safe, stable, appropriate housing. Sean did not show up at the address given for the home visit. Instead, he called Sanchez and tried to persuade her to meet him elsewhere. Sean never provided proof of earned income even though he was asked to provide the same in order for NFC to pay for a psychological evaluation.

During a visit with his 4-year-old children on October 17, 2016, Sean led them across a street in front of oncoming traffic, across another street without using a crosswalk, and across a third street without using a crosswalk even after the visitation worker instructed him otherwise. During these crossings, Sean did not hold the children's hands.

Kierscht opined, based on her professional experience, that it was in the children's best interests that Sean's parental rights be terminated. She based that opinion on the children's need for a safe, stable, and permanent environment and that Sean took no steps to better position him to parent the children.

(b) Evidence Regarding Casey

During the pendency of this case, Casey attended an inpatient family counseling and addiction treatment program, Nebraska Family Works (NFW). Unfortunately she failed to successfully complete the program or maintain sobriety. Donna Lenz, Casey's therapist at NFW, testified that Casey was twice previously admitted to the program. Casey's first stay at NFW lasted approximately 9 months, ending in 2014. She successfully completed alcohol addiction and mental health treatment programs at that time. Lenz could not recall the dates of Casey's first treatment period. After Casey's 2014 stay at NFW, a transition plan was approved whereby Casey was to move closer to her mom in Texas and become involved in her church; it was also recommended that she attend 12-step meetings.

Casey most recently returned to NFW in August 2016. Her children were placed with her in an apartment at the treatment facility on December 19. As Casey's treatment progressed with her children, she appeared to grow overwhelmed by caring for them, however. In fact, Casey specifically stated that she was overwhelmed, and the cleanliness of her apartment worsened as she grew less patient with her children. Casey eventually left the NFW facility with the children on December 26, against treatment team advice. The children were again removed from her care the next day. Of a number of therapeutic treatment goals--including safely parenting her children, utilizing and generalizing skills in the community, and demonstrating an ability to manage her own

emotions without resorting to substances, Casey only completed the early recovery learning coping skills unit prior to leaving the program according to Lenz.

Casey was directed to complete a number of rehabilitative-type programs and evaluations pursuant to an October 26, 2016, court order. Kierscht testified that she had never received a chemical dependency evaluation or initial diagnostic interview with respect to Casey. Moreover, Kierscht neither received a certificate indicating Casey completed a parenting class nor a signed card showing Casey had actively participated in AA or NA classes. Similarly, Casey never provided to Kierscht documentation that showed she completed a domestic violence course or inpatient treatment program.

On December 26, 2016, Casey took the children and left NFW against Sanchez' specific directions, which resulted in re-removing the children from Casey's care. Earlier that month, Casey had informed the NFW staff that her mother would be visiting from Texas around that time. In response, Sanchez informed Casey that she could not stay at her mother's hotel overnight with the children because she was uncertain Casey could handle a weekend by herself without any staff present. Sanchez was out of town on December 26, but another NFW employee told Casey she was not allowed to leave NFW to visit her mother because her apartment was unclean. Notwithstanding that instruction, Casey got into an Uber with the children and left NFW. NFW employees were unsure whether the Uber had car seats for the children. When Casey left her apartment at NFW in December, the kitchen trash was overflowing and there were soiled children's clothes left on one of the beds. Moreover, there was limited food in the apartment, and toys were strewn about.

Later on December 27, 2016, Casey called Sanchez, sounding very agitated and anxious, and asked if her mom could take the children back to Texas. Sanchez described this call from Casey as a huge red flag. Casey would not tell Sanchez where they were and also said she was not going back to NFW. At that point, Sanchez contacted the children's guardian ad litem, and the decision to again remove the children from Casey's care was made.

Additionally, when the children were removed from Casey's care on December 27, 2016, Sanchez testified that she offered Casey the opportunity to again have visits with her children if she would participate in random urine analyses. Casey was unwilling to comply with that condition. Similarly, Kierscht testified that a few weeks prior to trial, Casey asked whether NFC would change its recommendation regarding terminating her parental rights. Kierscht advised Casey that there was only a small timeframe before trial, but the best thing she could do in order to affect the NFC recommendation was to check herself into an inpatient treatment program. Casey was also unwilling to comply with that condition.

On February 17, 2017, Casey met with Kierscht and admitted that she had relapsed on drugs--telling Kierscht that she was actually coming down from a high as they spoke. Casey admitted to using morphine, methamphetamine, and opiates. Kierscht testified that Casey smelled of alcohol and had admitted to drinking alcohol again as well.

Kierscht opined, based on her professional experience, that it was appropriate to terminate Casey's parental rights. She based that opinion on Casey's failure to engage with services, substance relapses, failure to engage with her children, and failure to engage with her case plan goals and treatment plan.

By order dated June 15, 2017, the court held that all three children were within the meaning of Neb. Rev. Stat. § 43-292(2) and (6) (Reissue 2016) with respect to Casey and that termination of her parental rights was in the children's best interests. By separate order dated June 15, 2017, the court held that Treasean and Ariana were within the meaning of § 43-292(1), (2), (6), and (9) with respect to Sean and that termination of his parental rights was in their best interests.

Casey filed a notice of appeal on July 13, 2017, at 2:38 p.m., and Sean filed a notice of appeal on July 13, 2017 at 4:34 p.m.

## III. ASSIGNMENTS OF ERROR

Casey's sole assignment of error is that the juvenile court erred in finding that it was in the minor children's best interests to terminate her parental rights.

Sean does not assign errors in his brief but argues that the juvenile court violated his due process rights and further erred by finding termination to be proper pursuant to § 43-292(1), (2), (6), and (9) and by finding termination was in the children's best interests.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## V. ANALYSIS

Under § 43-292, in order to terminate parental rights, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds listed in the section have been satisfied and that termination is in the child's best interests. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that a parent is unfit. *Id.* The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id.* And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id.*

### 1. CASEY'S APPEAL

Casey does not contest the juvenile court's finding that the State met its burden of proof regarding her children falling within the meaning of § 43-292(2) and (6). Casey only assigns that the juvenile court erred in finding that termination of her rights was in the children's best interests. Specifically, Casey argues that the court erred in finding termination was in the children's best interests because the State did not provide evidence showing she could not be rehabilitated or reunited with her children. Moreover, Casey argues the State did not show what the children might gain or lose through a continued relationship with her or through a relationship with foster parents. On the other hand, the State argues the court correctly found it was in the children's best interests to terminate Casey's parental rights, emphasizing Casey's continued illicit drug use and inability

to provide a stable place of residency. We agree with the court's best interest determination and thus affirm.

The evidence clearly shows Casey has been unable to permanently avoid illicit drug use, which has resulted in detriment to her children's well-being. Casey has been treated for substance addiction on numerous occasions in the past, but lasting sobriety remains elusive. The present court action was only begun after Casey and her three children arrived at the Open Door Mission, which Casey was banned from entering, in December 2015. At that time, Casey's eyes were red and bloodshot; her speech was slurred, and she smelled of alcohol. A breath test revealed her BAC to be .228. Thus, the evidence shows that the action to terminate her parental rights actually began due to her lack of sobriety.

The evidence also shows Casey's continuing lack of parental fitness. As recently as February 2017, Casey acknowledged her continued use of morphine, methamphetamine, opiates, and alcohol. Casey has routinely been afforded the opportunity to engage in additional substance addiction treatment but declined those opportunities. After the children were again removed from Casey's care in December 2016, she was offered visitation if she would participate in random urine analysis testing. Casey declined to be tested however. Even when she was told the NFC may change its recommendation regarding terminating her parental rights if she willingly checked herself into an inpatient treatment program, Casey still declined treatment. The rehabilitation successes Casey has experienced have proved only temporary, and she has repeatedly chosen to not engage in more recent rehabilitative efforts.

Additionally, because of Casey's parental unfitness, the children have already spent significant time in foster care. Courts have found this a relevant factor in determining whether termination is in children's best interests. See, e.g., *In re Interest of Walter W.*, 274 Neb. 859, 872, 744 N.W.2d 55, 66 (2008) ("[c]hildren cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity"). Even if Casey were to immediately begin treatment and fully engage in rehabilitative efforts, Lenz testified that it would take 9 months to a year of treatment under the best circumstances before Casey should be reunified with the children. Termination, therefore, is in the children's best interests as it will prevent them from languishing in foster care while awaiting Casey's uncertain maturing. Accordingly we find termination of Casey's parental rights is in the children's best interests and thus affirm.

### 2. SEAN'S CROSS-APPEAL

At the outset, we must first discuss the irregularities of Sean's brief, which was filed on February 5, 2018. On the brief's cover, Sean identified himself as an appellant and cross-appellant. Sean is actually an appellee in this matter because his notice of appeal was filed approximately 2 hours after Casey's appeal was filed on July 13, 2017. See Neb. Rev. Stat. § 25-1913 (Reissue 2016). We note that Sean does not address Casey's claims but only seeks affirmative relief by arguing that error was committed by the juvenile court in terminating his parental rights. However, Sean did not assign any specific errors nor did he set forth his arguments of error in a separate division of the brief as required by Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014). That rule states:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the
> brief and it shall be set forth in a separate division of the brief. This division shall be headed

"Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

Sean's brief does not completely comport with court rules governing cross-appeals by appellees. He identifies himself on the cover of the brief as "Appellant and cross appellant." This error alone may not be fatal to his case in that this error only partially misidentifies him. However, he has not set forth his claims for relief in a separate section of his brief entitled "Cross-Appeal" as required by the court rule.

In *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999), the Nebraska Supreme Court refused to consider a father's assignments of error in a termination of parental rights case because he failed to properly set forth his assignments in the context of a cross-appeal as required by the rule. In that case, the father's brief was entitled "Brief of Appellee," which was appropriate as he filed his appeal after the mother. *Id*. However, along with resisting the mother's claims, the father also sought affirmative relief despite failing to properly designate his argument as a cross-appeal. *Id*. The court in *In re Interest of Natasha H. & Sierra H.* would not consider the father's assignments of error because "appellate courts of this state have always refused to consider a prayer for affirmative relief where such a claim is raised in a brief designated as that of an appellee." 258 Neb. at 146, 602 N.W.2d at 451. The father's brief was only designated as an appellee's brief even though he sought affirmative relief.

This case differs somewhat from *In re Interest of Natasha H. & Sierra H., supra*, in that Sean has designated himself as a cross-appellant and has presented argument in support of his request for relief. While his arguments are not set forth in a "separate section" it is at least arguable that a separate section would not be required where, as here, he does designate himself as a cross-appellant and he presents no argument in response to Casey. In this case however, even if Sean's brief is not considered to be fatally defective under the procedural rule described above, he still cannot be provided relief by this court.

In his brief on appeal, Sean does not set forth any assignments of error, but merely sets forth his claims within the argument section of his brief. This practice has been repeatedly disapproved by the appellate courts of this state. See e.g. *Logan v. Logan*, 22 Neb. App. 667, 859 N.W.2d 886 (2015). A cross-appellant's failure to include a separate section for assigned errors will result in an appellate court proceeding as though the party failed to file a brief or, alternatively, examining the arguments for plain error. *Id.* As such, if Sean's appeal is to be considered, it can only be considered for plain error. The record, as recounted above, clearly supports termination of Sean's rights. Therefore, we find no plain error in the decision of the juvenile court with respect to Sean.

## VI. CONCLUSION

We conclude that the State proved statutory grounds for termination of Casey's parental rights to Treasean, Ariana, and Jonathan and that termination is in the children's best interests. We further conclude that no plain error exists in the juvenile court's findings with respect to Sean and therefore affirm the termination of his parental rights as well.

AFFIRMED.