IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF JOSSELYNN E.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF JOSSELYNN E., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

EVELYN M., APPELLANT, AND ROBERT E., APPELLEE AND CROSS-APPELLANT.

Filed May 7, 2013.   No. A-12-455.

Appeal from the County Court for Buffalo County: GERALD R. JORGENSEN, JR., Judge. Affirmed.

Stephen G. Lowe for appellant.

Patrick M. Lee and Mandi J. Amy, Deputy Buffalo County Attorneys, for appellee State of Nebraska.

Vikki S. Stamm, of Stamm & Associates, P.C., L.L.O., for appellee Robert E.

D. Brandon Brinegar, of Ross, Schroeder & George, L.L.C, guardian ad litem for appellant.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## I. INTRODUCTION

Evelyn M. appeals and Robert E. cross-appeals the decision of the county court for Buffalo County terminating her parental rights to Josselynn E. on May 2, 2012. Because Evelyn filed the initial notice of appeal, Robert is designated as an appellee asserting a cross-appeal pursuant to Neb. Ct. R. App. P. § 2-101(C) (rev. 2012).

For the reasons that follow, we affirm the termination of the parental rights of Evelyn and Robert.

- 1 -

## II. BACKGROUND

Josselynn was born prematurely in May 2010 and spent about 20 days in the hospital. A voluntary case was opened with the mother, Evelyn, on July 8, because of concerns with regard to Josselynn's failure to thrive and Evelyn's ability to parent and take care of Josselynn on her own. Intensive services were set up including 24-hour care in the home to assist Evelyn with feeding, changing diapers, safety for newborns, and basic hygiene.

Josselynn was removed from Evelyn's care on August 18, 2010. An amended petition was filed on September 21 after it was determined Robert was Josselynn's father. Robert never had physical custody of Josselynn, and she remained in foster care through the close of the termination hearing on February 3, 2012.

Josselynn was adjudicated as a child as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) on April 8, 2011. A dispositional hearing was held on June 2, and Robert objected to the case plan and court report of the Department of Health and Human Services (DHHS). Robert's objections were overruled at a hearing on July 19, and the case plan and court report was ordered implemented.

The State filed motions to terminate the parental rights of Robert and Evelyn on June 23, 2011. The motion alleged termination grounds as to Robert under Neb. Rev. Stat. § 43-292(2) and (5) (Cum. Supp. 2012). The motion as to Evelyn alleged termination grounds under § 43-292(5) and (6).

The hearing on the State's motion to terminate parental rights commenced on October 24, 2011, and was continued on a number of dates through February 3, 2012. The State filed amended petitions on January 27, adding the ground that Josselynn had been in foster placement for 15 or more months of the most recent 22 months.

Robert's parental rights to a child were terminated in South Dakota in 2006. The child was initially removed for "failure to thrive, abuse-neglect and also mentally unstable parenting." Robert testified that he relinquished his parental rights to another child in June 2009 because he was mentally unstable and could not take care of the child. He testified that the child had tumors and that he could not afford the medical care. Additionally, he admitted he was mentally unstable and questioned his own ability to care for the child and take care of himself.

The State offered the opinions of two clinical psychologists, Drs. John Meidlinger and Lee Kimzey, and three separate psychological evaluations demonstrating that Robert suffered from mental illness and that his illness would continue for a prolonged, indeterminate period. Robert was diagnosed as having a bipolar disorder and an antisocial personality disorder, which included antisocial, compulsive, passive aggressive, sadistic, and histrionic components.

The psychologists testified that Robert has a low tolerance for frustration and that this would risk his ability to parent a child on a daily basis. They also testified Robert has difficulty controlling his anger, setting routines, and empathizing with the thoughts and needs of a child. Robert admitted that when he does not take his medication, he is dangerous to himself and to others. Despite this fact, Robert testified he was off of his medications at several times during the pendency of this case. During these periods, he lost employment, incurred criminal charges, and attended therapy only sporadically. Robert is a registered sex offender and served a jail sentence

for sexual assault of a vulnerable adult in Custer County in 2009. Robert testified that while incarcerated, he attempted suicide three times.

The State offered the opinion of Dr. Meidlinger, who diagnosed Evelyn with a personality disorder with borderline and dependent traits and with intermittent explosive disorder. He testified these were mental illnesses, and he opined that they would also continue for a prolonged indeterminate time. He also testified Evelyn is borderline mentally handicapped.

The intermittent explosive disorder results in occasional lapses of control, resulting in violence and irritability when she is not on medication. Additionally, Dr. Meidlinger testified that Evelyn cannot protect herself, much less protect a child, and that her strong dependence would likely result in a child raising her, rather than her raising the child. He testified Evelyn's ability to protect the child, provide structure, and make more complex decisions would be increasingly difficult as the child gets older. He also testified that she can be taught regular routines and schedules, but situations that fall outside of the routine would present difficulties for her. He opined her prognosis for ever being able to successfully parent her child is poor.

Dr. Meidlinger had greater concerns that if Robert and Evelyn parented together, their personalities would increase the volatility and their problems in parenting the child. During the pendency of the case, Evelyn lived with Robert and Robert's wife in an "8-by-37" foot long "camper." Evelyn was "kicked out" several times, and she turned down DHHS' efforts to assist her in obtaining her own home, despite being told the camper was not an appropriate place for Josselynn to return to. Robert testified that Evelyn needs a roommate to supervise her taking her medications and to watch out for her mental health. The evidence shows that Evelyn failed to take her medications on at least two occasions during this case and that she attempted suicide.

Evelyn and Robert were given the opportunity to have 22 visits per month with Josselynn. The court calculated a potential for 154 visits between April and October 2011--Robert attended 21 and Evelyn attended 41. From the beginning of the evidentiary hearing in October 2011 until the end of the hearing in February 2012, there were 66 possible visits--Robert attended 1 and Evelyn attended 23.

A visitation supervisor testified Robert was affectionate toward Josselynn, but was often disengaged from her and at times was harsh and scolding. The supervisor expressed concerns about Robert's temperament. The supervisor testified Evelyn is sometimes oblivious to Josselynn's development and puts her in dangerous situations. He also was concerned that many of Evelyn's relationships are volatile and that she has a habit of putting her own interests first.

The record indicates Josselynn has been in out-of-home placement for at least 15 of the most recent 22 months and that the case has not advanced past supervised visitation. Josselynn's pediatrician testified that Josselynn is behind in her development in motor skills and language and that she needs caretakers who are consistent and willing to work with her on a regular basis. The court concluded Robert and Evelyn are unable or unwilling to provide for Josselynn's best interests.

The court's journal entry indicates that the statutory grounds for termination were met under § 43-292(2), (5), and (7) as to Robert and under § 43-292(5), (6), and (7) as to Evelyn, and the court found that termination of Evelyn's and Robert's parental rights was in Josselynn's best interests. The court's ruling was filed on May 2, 2012.

## III. ASSIGNMENTS OF ERROR

Evelyn assigns five errors but does not argue with specificity, so we are limited on appeal to a review for plain error. See, Neb. Ct. R. App. P. § 2-109(D)(1)(c) (rev. 2008); *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011).

Robert's assignments of error on cross-appeal, consolidated and restated, are that the trial court erred in adjudicating Josselynn as a child as described in § 43-247(3)(a), in finding the State provided reasonable efforts to preserve the family under Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2012), and in terminating his parental rights under § 43-292.

## IV. STANDARD OF REVIEW

To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Turbines Ltd. v. Transupport, Inc.*, 19 Neb. App. 485, 808 N.W.2d 643 (2012).

An appellate court, upon determining that a parent's assignments of error did not comply with requirements for an appellate brief may proceed as though the party has failed to file a brief or, alternatively, may examine the proceedings for plain error. *In re Interest of Jamyia M., supra.*

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

In an appeal from an order terminating parental rights, an appellate court tries factual questions de novo on the record. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

Appellate review is independent of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009).

## V. ANALYSIS

### 1. TERMINATION OF EVELYN'S PARENTAL RIGHTS

#### (a) Statutory Grounds for Termination
#### According to § 43-292

Evelyn assigns five errors on appeal, but she argues only generally that she was not given adequate time to work toward reunification and that reasonable efforts were not provided to preserve and reunify the family.

To be considered by an appellate court, an error must be specifically assigned and specifically argued in the brief of the party asserting the error. *Turbines Ltd., supra.* Because Evelyn's brief does not comply with the requirements for an appellate brief, we limit our analysis to a review for plain error.

The court found the statutory grounds for termination were met under § 43-292(5), (6), and (7) with regard to Evelyn and that termination was in the child's best interests. Evelyn appears to dispute only the court's finding with regard to § 43-292(6).

- 4 -

The trial court found that Evelyn did not provide proper care for Josselynn while she had physical custody and that Josselynn was removed from Evelyn's care when she was approximately 3 months old. Josselynn was in out-of-home placement for at least 15 of the most recent 22 months at the time of termination, satisfying the requirement to find that the condition listed in § 43-292(7) was met. Further, Evelyn did not dispute the court's finding that she would be unable to discharge parental responsibilities because of mental illness or mental deficiency under § 43-292(5). Having determined that the court found adequate grounds for termination under § 43-292(5) and (7), we need not address Evelyn's assignment of error with regard to subsection (6).

### (b) Josselynn's Best Interests

A review of the evidence shows that Evelyn did not take advantage of the services provided and that she failed to make satisfactory progress. Prior to removal, Evelyn had a support worker in the home to teach her appropriate parenting skills and requirements for Josselynn's safety.

After Josselynn's removal, Evelyn had numerous opportunities for supervised visitation with Josselynn, including transportation to and from the visits. She failed to take full advantage of this time. DHHS offered therapy, family support, and pretreatment assessment recommendations, as well as a safety plan, but Evelyn was unable to fully comply. The record also shows that Evelyn suffers from mental deficiencies which would make it difficult for her to provide the necessary parental care. She has failed to obtain and maintain adequate housing, and she continued to live with Robert and his wife, despite warnings that this was not appropriate housing for Josselynn to return to. She has not had a source of employment since 2007.

The record shows the court determined that one or more of the conditions for termination under § 43-292 was present and that clear and convincing evidence existed to support a finding that termination was in Josselynn's best interests. We find no evidence of plain error and affirm the trial court's termination of Evelyn's parental rights.

### 2. TERMINATION OF ROBERT'S PARENTAL RIGHTS

### (a) Adjudication

Robert asserts the court erred in adjudicating Josselynn as a child as described in § 43-247(3)(a).

On April 8, 2011, the Buffalo County Court, sitting as a juvenile court, adjudicated Josselynn as a child as described in § 43-247(3)(a). The court cited Robert's awareness of Evelyn's shortcomings prior to removal and the fact that Robert continued to live with Evelyn throughout the adjudication hearings. The court also stated:

> While it is true, that there is no direct evidence of neglectful treatment by [Robert] (insomuch as he has never had physical custody of Josselynn) the evidence shows that his rights have been terminated to children involuntarily and by voluntary relinquishment. At least part of the reason for that termination was mental health issues of [Robert] which the evidence shows, at this time, have not been corrected or addressed.

Neb. Rev. Stat. § 43-2,106.01(1) (Cum. Supp. 2012) provides that a final order or judgment may be appealed to the Nebraska Court of Appeals in the same manner as an appeal from the district court to the Court of Appeals. A final order is an "order affecting a substantial right made in a special proceeding." Neb. Rev. Stat. § 25-1902 (Reissue 2008). A juvenile court proceeding is a "special proceeding" for appellate purposes. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Both a judicial determination after an adjudication that affects the substantial rights of parents to raise their children as well as a dispositional order imposing a rehabilitation plan for parents are final, appealable orders. *Id.* An appeal of such an order must be filed within 30 days of the final order. Neb. Rev. Stat. § 25-1912(1) (Reissue 2008).

The purpose of adjudication is to protect the interests of the child, while the parents' rights are determined at the dispositional phase. Parents are not permitted to collaterally attack the adjudication or the case plans that were adopted pursuant to the adjudication. In the absence of a direct appeal from an adjudication order, a parent may not question the existence of facts upon which the juvenile asserted jurisdiction. *In re Interest of Ty M. & Devon M., supra*; *In re Interest of Ramon N.*, 18 Neb. App. 574, 789 N.W.2d 272 (2010).

In this case, Robert asserts that the trial court should not have adjudicated Josselynn as a child within § 43-247(3)(a) because she did not need the services of DHHS and that placement should have been initially entrusted to Robert. However, Robert did not file any appeal in connection with this case until his notice of appeal from the order terminating his parental rights on May 31, 2012. Robert clearly did not appeal the adjudication of Josselynn within the 30-day time period allowed under the Nebraska Revised Statutes, and accordingly, this assignment of error is without merit.

(b) Reasonable Efforts and Relevance
of Prior Terminations

Robert assigns the State failed to show reasonable efforts were made to preserve and reunify the family. He also argues the prior termination of his parental rights to a special needs child in South Dakota is irrelevant to the termination of his parental rights in this situation.

The Nebraska Revised Statutes provide that reasonable efforts to preserve and reunify the family are not required if a court of competent jurisdiction has determined that the parental rights of the parent to a sibling of the juvenile have been terminated involuntarily. § 43-283.01(4)(c).

Whether Robert's parental rights have been involuntarily terminated to a sibling of Josselynn is clearly relevant in determining whether reasonable efforts are required under the statutes. In this situation, reasonable efforts to preserve and reunify the family are not required, as the court found, based on the evidence that Robert's parental rights were terminated to a child in South Dakota in 2006.

Further, reasonable efforts are required under the juvenile code only when termination is sought under § 43-292(6). *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009). In this case, termination of Robert's parental rights was not sought under § 43-292(6), but was initially sought under § 43-292(2) and (5), and the petition was later amended to include subsection (7). It was not necessary for the State to make reasonable efforts to reunify this family, and Robert's assignment of error to the contrary is without merit.

## (c) Termination Under § 43-292

The court found by clear and convincing evidence that the statutory grounds for termination were present. Under § 43-292, the court may terminate all parental rights between parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the listed conditions exist.

Robert does not dispute that the statutory grounds for termination existed under § 43-292(2), (5), and (7).

Section 43-292(5) provides grounds for termination of parental rights when "[t]he parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period." When a parent suffers from a mental deficiency, mental illness, or mental disorder and cannot be rehabilitated within a reasonable period of time, the best interests of the child require a final disposition be made without delay. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999).

The evidence shows Robert has been diagnosed as having a bipolar disorder and an antisocial personality disorder, which includes antisocial, compulsive, passive aggressive, sadistic, and histrionic components. Robert testified regarding his history of mental health issues beginning in childhood, and he admitted he will deal with mental illness for the rest of his life. He admitted to abusing alcohol and said that when he was drinking, he was a "very violent person, very hostile, very unstable, very mentally unstable person." Robert also testified that he attempted suicide multiple times and is a registered sex offender.

Robert submitted to psychological examinations, and the psychologists opined that Robert's prognosis for being able to successfully parent Josselynn, "or even refrain from sexual abuse of her," to be quite poor, urging "extreme caution" prior to returning her to Robert's care. The psychologists also noted Robert's impulse control issues, as well as his difficulty making good decisions about Josselynn. Dr. Meidlinger testified that Robert's bipolar disorder and antisocial personality disorder were both mental disorders or illnesses which could be expected to last for a prolonged, indefinite period of time.

The State proved by clear and convincing evidence that Robert would be unable to discharge his parental responsibilities because of mental illness or mental deficiency, and there were reasonable grounds to believe that such condition would continue for a prolonged indeterminate period. Additionally, a review of the evidence shows Josselynn was in an out-of-home placement for 15 of the most recent 22 months, satisfying the requirements of § 43-292(7). Having determined that at least one of the statutory grounds for termination existed, we must determine whether termination was in the best interests of the child.

The best interests of the child require termination of parental rights where a parent is unable or unwilling to rehabilitate themselves within a reasonable time. *In re Interest of Emerald C. et al.*, 19 Neb. App. 608, 810 N.W.2d 750 (2012). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id.*

A review of the evidence shows Robert has continued mental illness or deficiencies which would make parenting extremely difficult. He requires medication and counseling to

control these conditions, and he has historically had trouble adhering to his medication routine. During periods when he is not taking medication, Robert has violated the law, lost his job, and stopped attending counseling. He has attempted suicide and has not taken the appropriate steps to manage his mental health, creating a safety concern for Josselynn.

Josselynn has been placed with a single foster family since she was removed in August 2010. During this time, Robert was given ample opportunities to visit Josselynn, but he failed to take advantage of the majority of such opportunities. Robert had 154 possible visitations scheduled between April and October 2011, and Robert attended only 21 visits. From the first day of the hearing in October 2011, to the final day in February 2012, Robert had 66 opportunities to visit with Josselynn and saw her only once. When Robert did attend, visitation workers noted he did not accomplish family support goals of appropriately soothing and calming a toddler. Robert lived with his wife and Evelyn in a camper that was not approved by DHHS for visitations, and Robert's lack of progress meant visits were always fully supervised.

We find that termination of Robert's parental rights is in the best interests of Josselynn and affirm the decision of the trial court.

## VI. CONCLUSION

We find there is clear and convincing evidence that one or more of the statutory conditions exist for termination under § 43-292 and that termination of the parental rights of Evelyn and Robert is in Josselynn's best interests. We affirm the decisions of the trial court.

AFFIRMED.