IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KOOS ENTERPRISES V. BONNELL


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


KOOS ENTERPRISES, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, ET AL.,
APPELLEES AND CROSS-APPELLEES,

V.

MARVIN HUGHES, APPELLANT, AND
KATHLEEN T. BONNELL, APPELLEE AND CROSS-APPELLANT.


Filed December 10, 2019.    No. A-18-496.


Appeal from the District Court for Adams County: STEPHEN R. ILLINGWORTH, Judge. Affirmed.

Marvin Hughes, pro se.

Kathleen T. Bonnell, pro se.

Galen E. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellees Koos Enterprises, LLC, et al.


MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

INTRODUCTION

In 2011, Koos Enterprises, LLC; Treehouse Studio, LLC; and Linda Kube, doing business as My Sister's Closet (Kube) (collectively the Buyers), each entered into contracts with Marvin Hughes that permitted the Buyers to occupy retail space in a building Hughes owned (later owned by Kathleen T. Bonnell) and provided for a "transfer of title/deed of ownership" to the Buyers after a 5-year "homestead period." The Buyers ultimately vacated their retail spaces and filed

- 1 -

claims of breach of contract and fraudulent misrepresentation against Hughes and Bonnell in the Adams County District Court.

After a bench trial, the district court entered a judgment in favor of the Buyers solely on their breach of contract claims and awarded damages to each of them. Hughes and Bonnell, each acting pro se before the district court and this court, appeal that order. We affirm.

BACKGROUND

In 2016, the Buyers filed a complaint against Hughes and Bonnell. The Buyers alleged that they entered into agreements with Hughes titled the "Homestead Act of Hastings, Nebraska Agreement" (collectively Homestead Agreements), which stated in pertinent part:

> The purpose of this agreement is to transfer ownership of part of the property located at 505 N. Hastings [Avenue] in Hastings, [Nebraska,] from owner (seller [Hughes]) to other agreeing party(s) in a "Homestead Act" fashion. The buyer's financial commitment to the seller will contribute to sustaining the operation and life of subject property for the next five (5) years. At the end of this homestead period, there will be transfer of title/deed of ownership to BUYERS(S) [sic].

The property was a former school building located in Hastings, Nebraska (the City). The Buyers asserted that Hughes purported to own the property, legally described as "Lots One (1) through Twelve (12), inclusive, Block Six (6), Original Town, now City of Hastings, Adams County, Nebraska," and that Hughes purported to convey to the Buyers ownership of a portion of that property. The Buyers claimed that since the time they entered into the Homestead Agreements, Hughes allegedly had "never filed a condominium property regime" with the Register of Deeds of Adams County to authorize the type of transfer of ownership contemplated by the Homestead Agreements.

The Buyers claimed that by a deed recorded in December 2015, Hughes conveyed the property to Bonnell. Since that conveyance, "Bonnell has contacted all three [of the Buyers], continuing to assert that the [Homestead Agreements are] valid." Based on Hughes' and Bonnell's representations, an interest in real estate was "actually conveyed" and each of the Buyers would have "complete ownership" of the property after 5 years. According to the Buyers, they made improvements to the property, expended labor, provided materials that improved the property, made "homestead" payments, and incurred consequential damages. The Buyers claimed the following amounts had been paid either to Hughes and/or Bonnell or to improve the property: $45,579.28 (by Koos Enterprises), $51,275.83 (by Treehouse Studio) (however, in the prayer of the complaint, the amount requested was $51,215.83), and $20,646.90 (by Kube).

The Buyers further alleged that any sums they paid to improve the property (including "rent") were fraudulently induced by Hughes and Bonnell. The Buyers said they detrimentally relied upon Hughes' and Bonnell's representations about ability to convey ownership interests in the absence of compliance with Nebraska's "Condominium Property Regime Act"; those representations were "known to be false" or "made recklessly."

In separate 2016 filings containing the same substantive content, Hughes and Bonnell by "Special Appearance" claimed that the district court did not have jurisdiction over the case because

"[Hughes/Bonnell] is a TRIBAL MEMBER, registration number TTB-201600290, and the property located at 714 West 5th Street, Hastings [(another street address for the former school building)] is in a Tribal Trust, and not subject to this [c]ourt's jurisdiction." They also claimed that the Buyers were in breach of the Homestead Agreements for failure to comply with contract requirements. After a hearing, the district court on October 14 overruled both Hughes' and Bonnell's "Special Appearances" and gave them 30 days to answer or otherwise plead to the complaint. On November 14, Hughes and Bonnell jointly filed an "Answer/Response," in which they questioned whether the lawsuit was about a "valid" contract.

After a hearing, the district court on February 15, 2017, ordered Hughes and Bonnell to file an answer within 14 days. On February 27, they jointly filed by "Special Appearance" an "Answer," generally denying all allegations in the complaint. They admitted that Hughes acquired the property in 2009. Hughes and Bonnell "previously owned" the property but "it has been in a Tribal Trust [(the Trust)] with the Totonaca Tribe of Mexico and the United States Tribes, since May 10, 2016." In a subsequent motion, defendants claimed the property was placed in the Trust "with the Turtle Island Tribal Network for Indigenous Health Centers." "As Trustees [Hughes and Bonnell] are unaware of the Mexico's [sic] relationship and laws governing Mexican Tribes." They claimed the court lacked jurisdiction "over all the property."

Further, Hughes and Bonnell claimed to have given contract signers a "guide" prepared by an attorney on how to set up a condominium association (indicating the defendants' belief that this was an obligation for the Buyers to accomplish). They claimed the Buyers "voluntarily ended their contract[s]" before the stated 5-year term (they acknowledged existence of Homestead Agreements with Koos Enterprises and Treehouse Studio but claimed Kube merely entered into a "month to month verbal commitment"). Hughes and Bonnell asked for dismissal of the case with prejudice and for outstanding bills to be paid to them in full.

We note that Hughes and Bonnell submitted numerous pretrial filings concerning (among other things) requests for dismissal or a change of venue, a stipulation to confine the case to the "four corners" of the Homestead Agreements, removal to federal court, the judge's recusal, exclusion of certain witness testimony, and removal of a notice of lis pendens on the property. Each of those motions were overruled. In an April 2017 journal entry and order, the court again overruled the defendants' "Special Appearance" but they continued to submit filings under that designation.

A bench trial took place September 25 through September 27, 2017. Hughes appeared on behalf of the defense; Bonnell did not make an appearance. Each party presented witness testimony and exhibits.

On April 19, 2018, the district court entered an order finding as follows: Hughes and Bonnell "at all times relevant to the issues in this case" owned the former school building, which Hughes bought for $1 from a church in 2009. He began to develop the building commercially, attempting to create a condominium development by giving others the "'opportunity'" to own part of the building. Hughes entered into agreements with Koos Enterprises (effective June 1, 2011), Kube (dated October 15, 2011), and both Kay Evans of Treehouse Studio and Kube (dated October 15, 2011). Evans and Kube are sisters who first signed the agreement together and then decided to have separate spaces. The Buyers owed a square footage charge for maintenance provided by

Hughes and the Buyers were responsible for structural improvements and payment of their utilities. Certain improvements had been made by Koos Enterprises and Kube into their respective spaces. Hughes assured each of the Buyers that they would own the real estate after 5 years of occupancy. Hughes retained an attorney to "do work on the project" in March 2011. That attorney testified that "to achieve a Condo Status" additional "title work" had to be completed--e.g., a "Master Deed" executed by "'all'" parties, including Hughes who had an "obligation" to participate. The attorney said that the Homestead Agreements created a property interest sufficient to create a "Master Deed." The district court noted that Hughes did not file such a deed, which deed was necessary to establish a condominium regime.

The district court found that around December 7, 2015, Kube received a letter from Bonnell advising that Bonnell was the owner of the building and that all exterior doors would be locked. The next day, Kube cancelled her December payment. Kube testified that many prospective customers "walked away" because of "no trespassing" signs placed on the premises by Hughes. Hughes told her he put up those signs to keep city officials out. Neither Kube nor Treehouse Studio completed 5 years of occupancy. We note the record includes a copy of the letter dated January 2016, that the City's attorney said he sent to building occupants as a notice to vacate the building due to Hughes' failure to comply with building and maintenance codes and the lack of necessary building permits or certificates of occupancy. The attorney said that "our building codes require a certificate of occupancy any time the use of a building is changed" and that the building use changed from being a school to "some type of a commercial enterprise and residential enterprise." Diane Koos (of Koos Enterprises) said that after 5 years passed, she asked for title in July; she moved because of a notice to vacate from the City.

The district court found that Hughes blamed "many of his problems" on the City. Since acquiring the property, he has been involved in "lawsuits and issues" with the City, primarily about code violations. In a separate action (CR11-1553), Hughes was convicted of 21 code violations (twice affirmed on appeals). Hughes argued that it was not his and Bonnell's fault that the Buyers "'did nothing'" to protect their businesses when City officials began to try to "'take the building away'" from Hughes and Bonnell.

The district court said Hughes conveyed the building to Bonnell, who in September 2016 conveyed it by warranty deed into the Trust for the benefit of "United States of America Tribe(s) & Totonaca Tribe of Mexico into Tribal Healing Center Trust (Grantees)" with Bonnell as trustee. The court noted that "Hughes claims this is legitimate because the tribe has a[n] EIN tax number." The mailing address of "the Tribe" was located in Nevada. Hughes "provided no independent evidence of the Tribe's existence" and filed a mechanic's lien on the property in the amount of $707,718.88 in November. The court believed the transfer of the property to the Trust was a "sham transaction" and a "Red Herring" in regard to the instant action; the lawsuit was "not against the building but against Bonnell and Hughes."

The district court understood that the complaint stated claims of fraudulent misrepresentation and breach of contract. It concluded that the Buyers failed to prove their fraudulent misrepresentation claims, finding that Hughes did not enter into the contracts with the intent to defraud the Buyers. Instead, Hughes became "so caught up" in his "fight" with the City that he was unable to complete his end of the bargain. The district court determined that each of

the Buyers proved their breach of contract claims and that each defense generally raised was meritless--i.e., that the City prevented performance, that it was not Hughes' and Bonnell's responsibility to form a condominium regime, that the property was in the Trust, and that the Buyers did not occupy spaces for 5 years. The district court concluded "when [the Buyers] vacated the premises . . . [Hughes and Bonnell] would not and could not comply with the terms of the contract through Hughes' and Bonnell's own actions. These include failing to provide a Master Deed, placing no trespassing signs outside the premises and engaging in a prolonged and futile fight against the City." The court stated, "[I]t would have been an exercise in futility for [the Buyers] to stick it out for five years as no deed was forthcoming, business was being driven away, the building had numerous code violations and [the Buyers] had received notices to vacate from the City." Judgment was entered against both Hughes and Bonnell as follows: $45,579.28 plus interest for Koos Enterprises, $51,215.83 plus interest for Treehouse Studio, and $20,646.90 plus interest for Kube. No attorney fees were awarded.

Hughes timely filed a notice of appeal. Although Bonnell did not file a notice of appeal, she joined in Hughes' appellate brief (each signed the brief in his or her individual capacity).

## ASSIGNMENTS OF ERROR

Hughes and Bonnell, each acting pro se, assign as error that the district erred by entering an order in favor of the Buyers "and went beyond the court's jurisdiction" and "ruled on an Irrevocable Trust that was never a party to the action, or formed under Nebraska law, and to which the Judge did not have subject matter jurisdiction, personal jurisdiction, or lawful jurisdiction to rule on the validity or non-validity of the Irrevocable Trust; . . . only the proper Authority of the State the Trust that was formed has that authority." Brief for appellant and cross-appellant at 8.

As the Buyers suggest in their brief, it appears Hughes and Bonnell only assign error to the district court not having jurisdiction over the action because the real estate at issue had been placed in a trust outside its jurisdiction; we agree that the paragraph constituting Hughes' and Bonnell's assignments of error can be construed in such a way. Further, to the extent Hughes and Bonnell sought to separately assign error generally to the district court's order entered in favor of the Buyers, they do not specifically assign errors corresponding with their arguments set forth later in their brief. Therefore, while we will address the assigned error related to the district court's jurisdiction, we will otherwise limit our review of the district court's order for plain error. See *Mays v. Midnite Dreams*, 300 Neb. 485, 915 N.W.2d 71 (2018) (appellate court may, at its option, notice plain error).

## STANDARD OF REVIEW

Appellate courts independently decide questions of law. *Foundation One Bank v. Svoboda*, 303 Neb. 624, 931 N.W.2d 431 (2019).

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018).

## ANALYSIS

### PARTIES ON APPEAL

As stated previously, Hughes filed a notice of appeal but Bonnell did not; together they submitted one appellants' brief. Because Hughes properly filed an initial (and only) notice of appeal, he is designated as an appellant and all other parties are designated as appellees and have the right to cross-appeal, which need only be asserted in the appellee's brief as provided by Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014). See Neb. Ct. R. App. P. § 2-101(C) and (E) (rev. 2015). Bonnell was therefore required to follow our rules on cross-appeals, given her status as an appellee/cross-appellant. See § 2-109(D)(4) (cross-appeal shall be noted on cover of appellee's brief, set forth in separate division of brief headed "Brief on Cross-Appeal," and be prepared in same manner and under same rules as brief of appellant).

We recognize the Supreme Court's requirement of strict compliance with § 2-109(D)(4). See *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179 (2019) (court declined to consider merits of cross-appeal when brief failed to set forth separate cross-appeal title page and table of contents). However, unlike the appellee in *Krejci v. Krejci, supra*, who attempted to file a brief of appellee and brief on cross-appeal but failed to comply with § 2-109(D)(4), Bonnell filed a joint appellants' brief with Hughes. The Supreme Court has distinguished between the two situations, stating that the "distinguishing factor is that in *Knaub v. Knaub,* 245 Neb. 172, 512 N.W.2d 124 (1994), and *In re Application A-16642,* [236 Neb. 671, 463 N.W.2d 591 (1990)]*,* a party who was an appellee and should have cross-appealed mistakenly designated itself as an appellant, rather than as a cross-appellant." *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 146, 602 N.W.2d 439, 451 (1999). In such a situation, the Supreme Court considered the appellee's arguments. We note that the situation in *Knaub v. Knaub*, as further described by the court in *In re Interest of Natasha H. & Sierra H., supra*, is somewhat similar to the present situation. In *Knaub*, an ex-husband sought to modify a child support and alimony award; the district court dismissed the action and assessed attorney fees against the ex-husband and his attorney. The ex-husband's attorney and the ex-husband each filed a notice of appeal, but the ex-husband's notice was a nullity because it was filed second. See, Neb. Ct. R. App. P. § 2-101(C); *In re Interest of Natasha H. & Sierra H., supra*. The two parties then filed a "combined brief, which designated both of them as appellants," and the Supreme Court considered both parties' arguments. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. at 146, 602 N.W.2d at 451. We proceed to do the same.

### JURISDICTION OVER TRUST

Hughes and Bonnell claim that the district court had "no subject matter jurisdiction or personal jurisdiction over [the] Trust [that] was never sued or a party to the action and was formed in another State." Brief for appellant and cross-appellant at 10. We emphasize that their claim on appeal does not relate to whether the district court had jurisdiction over them personally or over the breach of contract dispute between the parties. Rather, they argue the district court's order is void because the court lacked subject matter jurisdiction.

Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general

subject matter involved. *Boyd v. Cook*, 298 Neb. 819, 906 N.W.2d 31 (2018). District courts have jurisdiction over any civil proceeding that could have been brought in the English equity or common-law courts, and a breach of contract is a common-law action. See *Kotrous v. Zerbe*, 287 Neb. 1033, 846 N.W.2d 122 (2014). There is no question that the district court had subject matter jurisdiction over the Buyers' breach of contract claims.

All of Hughes' and Bonnell's arguments related to jurisdiction pertain to their underlying allegation that the property at issue is now under some tribal trust over which the district court had no authority. They claim, "The United States of America and Totonaca Tribe of Mexico Irrevocable Trust did not give their Sovereignty to the Lower Courts" and the district court "did not have authority to rule against an Irrevocable Trust not formed or governed by the laws of Nebraska, or a party to the action." Brief for appellant and cross-appellant at 18. However, regardless of the existence of such a trust or the possibility of the property being held in such a trust, the district court entered a judgment only against the named defendants to the action, Hughes and Bonnell, on a breach of contract claim brought by the Buyers. The district court did not enter a judgment against or for the Trust; in other words, the district court did not exercise jurisdiction over the Trust. As the district court stated, any transfer of the property to the Trust was a "sham transaction" and a "Red Herring" in regard to the instant action; the lawsuit was "not against the building but against Bonnell and Hughes." We agree, and we find no merit to this assigned error.

CORRECTNESS OF RULING IN FAVOR OF BUYERS

As previously noted, to the extent Hughes and Bonnell generally assert that the district court erred by ruling for the Buyers (on the breach of contract claims), they did not specifically assign errors in this regard. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). See, also, § 2-109(D)(1)(e) (requirements for assignments of error section in brief of appellant; consideration of case is limited to errors assigned and discussed); *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015) (pro se litigant will receive same consideration as if he or she had been represented by attorney, and concurrently, that litigant is held to same standards as one who is represented by counsel). Although Hughes and Bonnell make various arguments in their brief, such as: the Buyers breached the Homestead Agreements and had no right to recover damages, the district court was biased against Hughes and Bonnell, and parol evidence should not have been admitted, their assigned error is simply too broad and fails to comply with § 2-109(D)(1)(e).

Therefore, we limit our review of the district court's decision related to the breach of contract claim for plain error. See *Mays v. Midnite Dreams, supra* (appellate court may, at its option, notice plain error). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Estate of Schluntz v. Lower Republican NRD, supra*. In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000).

The district court found that Hughes and the Buyers entered into contracts (exhibits 6, 24, 25, and 58); Hughes later conveyed the property to Bonnell. The court found the terms of the contracts were that Hughes would transfer ownership of the property if the Buyers sustained their operations and life of the property for 5 years, that the Buyers were responsible for their areas and had to pay a monthly fee and fulfill other conditions set out in the contracts, and that at the end of 5 years, Hughes as the seller was to transfer title. Hughes and Bonnell breached the Homestead Agreements because it was "clear" that when the Buyers vacated the premises, Hughes and Bonnell would not and could not comply with the terms of the contract through Hughes' and Bonnell's own inaction or actions. One inaction was Hughes' and Bonnell's failure to execute a "Master Deed," which the district court found was the owner's responsibility under Neb. Rev. Stat. §§ 76-803 and 76-809 (Reissue 2008) to establish a condominium property regime. Other actions included placing "no trespassing" signs outside the premises and engaging in a "prolonged and futile fight" against the City (with "minimal" to no attempt to cooperate with the City to bring the building up to code). The breach of the Homestead Agreements was the proximate cause of the damage to the Buyers "because of money each expended to improve the premises" (damages alleged set forth in exhibits 20, 26, and 29).

We conclude there was evidence in the record to support the district court's judgment in favor of the Buyers, and the decision does not result in damage to the integrity, reputation, or fairness of the judicial process. Thus, we find no plain error.

CONCLUSION

For the foregoing reasons, we affirm the April 19, 2018, judgment of the district court.

AFFIRMED.